[Cite as *State v. Havens*, 2022-Ohio-1712.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 21CA3745 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Blake R. Havens, | : | |
| | : | |
| Defendant-Appellant. | : | **RELEASED: 05/19/2022** |

APPEARANCES:

Linda L. Fallis, Chillicothe, Ohio, attorney for Appellant.

Anna Villarreal, City of Chillicothe Law Director, and Michele R. Rout, Assistant City of Chillicothe Law Director, Chillicothe, Ohio, for Appellee.

Wilkin, J.

**{¶1}** Appellant, Blake R. Havens, appeals the Chillicothe Municipal Court's judgment finding him guilty of possession of drugs pursuant to R.C. 2925.11(C)(2).  On appeal, Havens asserts a single assignment of error: "The trial court erred when it denied defendant-appellant's motion to dismiss on speedy trial grounds."  In this case, the pivotal issue is a legal question: when does Havens' speedy trial time begin to run, on the date he was arrested and charged with operating a vehicle under the influence of drugs ("OVI"), *or* on the subsequent date he was arrested and charged with possession of drugs?  After our review of the parties' arguments, the record, and the applicable law, we agree with the latter, i.e., Havens speedy trial time began to run on the date that he was arrested for possession of drugs, which means that his speedy trial rights

were not violated. Therefore, we overrule Havens' assignment of error and affirm the judgment of the trial court.

BACKGROUND

{¶2} On January 19, 2020, a state trooper initiated a traffic stop against Havens. Havens admitted to the trooper that he had taken methadone. During the trooper's investigation of Havens for OVI, he confiscated pills that he believed were Xanax[1] (Alprazolam). The trooper arrested Havens and the state charged him with OVI. The pills were sent to the Ohio State Highway Patrol Crime Law Laboratory ("lab") for identification. Havens pled guilty to OVI on July 23, 2020.

{¶3} In August 2020, the state received test results from the lab, which confirmed that the pills seized from Havens were Alprazolam, which is a controlled substance. *See State v. Hill*, 2018-Ohio-67, 104 N.E.3d 794, ¶ 7 (4th Dist.). On September 18, 2020, the state charged Havens with possession of Alprazolam ("possession"), which was a first-degree misdemeanor. On January 4, 2021, the state arrested Havens for possession.

{¶4} On March 2, 2021, Havens filed a motion to dismiss the possession charge alleging a violation of his speedy trial rights. On March 12, 2021, the trial court issued a judgment entry denying Havens' motion to dismiss. Subsequently, Havens waived his right to trial and pleaded no contest to the possession charge. The court imposed a five-

---

[1] Xanax is a brand of Alprazolam. *State v. Massucci*, 6th Dist. Lucas No. G-4801-CL-201901302-000, 2021-Ohio-88, fn. 5.

day jail term, but also awarded Havens five days of jail-time credit.  The court further imposed 12 months of community control and restitution.

{¶5} It is this judgment that Havens appeals, asserting that his speedy trial rights were violated.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S-APPELLANT'S MOTION TO DISMISS ON SPEEDY TRIAL GROUNDS

{¶6} Havens argues that the trial court erred in determining that his speedy trial rights began to run on January 2, 2021, the date he was arrested for possession.  Rather, he maintains that his speedy trial rights began to run on January 19, 2020, the date that he was arrested for OVI and the trooper confiscated the Alprazolam pills.  Havens asserts that the state was not made aware of any "new facts" after January 19, 2020 that could have triggered a new speedy trial time for the possession charge.  Havens relies primarily on two cases, one from the Eighth and First District Courts of Appeals respectively.  *See State v. Rutkowski*, 8th Dist. Cuyahoga No. 86289, 2006-Ohio-1087 and *State v. Cooney*, 124 Ohio App.3d 570, 706 N.E.2d 854 (1st Dist. 1997).

{¶7} In *Rutkowski*, the state charged appellant with possession of marijuana after a traffic stop.  A subsequent lab result identified contraband also recovered during the traffic stop to be ecstasy, an illegal drug.  The state then charged appellant with possession of drugs. The court of appeals held that the lab results were not new facts that started a new speedy trial time for the drug-possession charge.

{¶8} In *Cooney*, the appellant was arrested for driving under the influence of alcohol. A subsequent lab result indicated the appellant's blood had a prohibited alcohol content at the time of his arrest. The state then charged appellant with driving with a prohibited amount of alcohol in his blood ("limits charge"). Similar to *Rutkowski*, the Court in *Cooney* held that the lab result was not a new fact that started a new speedy trial time for the limits charge.

{¶9} Pursuant to these cases, Havens argues that in a case like his, where a defendant is arrested/charged with an offense, and a substance suspected to be contraband is confiscated from the defendant and sent for lab testing, the subsequent lab result that confirms the illegal nature of the substance is not a "new fact" that triggers a new speedy trial time. Rather, the speedy trial for the subsequently-filed offense runs from the date that the original arrest was made or charge was alleged. Havens maintains that applying that rule in this case would mean that his speedy trial time for the possession charge would have started when he was arrested on January 19, 2020, the date that he was arrested for OVI. And because his drug charge was not resolved within 90 days of that date, his speedy trial rights were violated, and the trial court erred in not granting his motion to dismiss the possession charge.

{¶10} In response, the state argues that "new facts include the drug analysis results" as this Court has held on more than one occasion. *See State v. Daley*, 4th Dist. Ross No. 11CA3240, 2012-Ohio-796 and *State v. Skinner*, 4th Dist. Ross No. 6CA2931, 2007-Ohio-6320. Therefore, the state asserts that Havens' speedy trial rights for the possession charge did not begin to run at the

time of his arrest for OVI, but instead began on the date that the state filed the possession charge. The state maintains that Havens' speedy trial rights were not violated because his possession charge was resolved before his 90-day speedy trial time expired. Thus, the state contends that the trial court did not err in denying Havens' motion to dismiss, so we should affirm its judgment.

### A. Law

#### 1. Standard of Review

{¶11} "Upon review of a speedy-trial issue, a court is required to count the days of delay chargeable to either side and determine whether the case was tried within applicable time limits." *State v. Sanchez*, 110 Ohio St. 3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 8. "Appellate review of a trial court's decision on a motion to dismiss for a speedy-trial violation involves a mixed question of law and fact." *State v. James,* 4th Dist. Ross No. 13CA3393, 2014-Ohio-1702, ¶ 23, citing *State v. Carr,* 4th Dist. Ross No. 12CA3358, 2013-Ohio-5312, ¶ 12. "Generally, an appellate court will defer to a trial court's factual findings if competent and credible evidence supports those findings. However, an appellate court will review de novo a trial court's application of the law to those facts." *State v. Brown*, 2016-Ohio-1453, 63 N.E.3d 509, ¶ 5 (4th Dist.), citing *Carr,* at ¶ 12; *State v. Fisher*, 4th Dist. Ross No. 11CA3292, 2012-Ohio-6144, at ¶ 8. When reviewing the legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the state. *Skinner,* 4th Dist. Ross No. 06CA2931, 2007-Ohio-6320 at ¶ 10, citing *State v. Montgomery*, 61 Ohio St.2d 78, 80, 399 N.E.2d 552 (1980).

## 2.  Speedy Trial Rights

**{¶12}** "The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial." *State v. Delong*, 4th Dist. Ross No. 15CA3482, 2016-Ohio-1412, ¶ 11. "The Ohio Legislature incorporated this guarantee within R.C. 2945.71, which provides specific time limits within which a defendant must be brought to trial." *Id*. R.C. 2945.71(B)(2), applicable in this case, provides that "a defendant charged with a first * * * degree misdemeanor must be brought to trial within 90 days after arrest or service of summons." *Id*. "However, the R.C. 2945.71 time limits can be extended for any reason set out in R.C. 2945.72, but those extensions must be strictly construed against the State." *State v. Anderson*, 4th Dist. Scioto No. 15CA3696, 2016-Ohio-7252, ¶ 18, citing *State v. Alexander,* 4th Dist. Scioto No. 08CA3221, 2009-Ohio-1401, ¶ 17.

**{¶13}** "An accused presents a prima facie case for discharge by demonstrating that his case was pending for a time exceeding the statutory limits provided in R.C. 2945.71." *State v. Monroe*, 4th Dist. Scioto No. 05CA3042, 2007-Ohio-1492, ¶ 27, citing *State v. Butcher*, 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368 (1986).  The burden then shifts to the state to show that the time limit was extended under R.C. 2945.72. *Id.*, citing *Butcher* at 31. "If an accused is not brought to trial within the statutory time limit, the accused must be discharged.  R.C. 2945.73(B).

### 3.  Speedy Trial Time for Subsequently-Filed Charges that Arise from the Same Incident as the Initial Charge

#### a.  The Rule

**{¶14}** In *State v. Parker* the Ohio Supreme Court recognized the general

rule that

> " 'when new and additional charges arise from the same facts as
> did the original charge and the state knew of such facts at the time
> of the initial indictment, the time within which trial is to begin on
> the additional charge is subject to the same statutory limitations
> period [for speedy-trial time] that is applied to the original charge.'
> "

113 Ohio St. 3d 207, 2007-Ohio-1534, 863 N.E.2d 1032 ¶ 18, quoting *State v.
Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989), quoting *State v. Clay*, 9
Ohio App.3d 216, 218, 459 N.E.2d 609 (1983).

However, the Court has also recognized an exception: "When additional criminal

charges arise from facts distinct from those supporting an original charge, or the

state was *unaware of such facts at that time*, the state is not required to bring the

accused to trial within the same statutory period as the original charge

under R.C. 2945.71 et seq." (Emphasis added.) *Id.* at ¶ 19, quoting *State v.*

*Baker*, 78 Ohio St.3d 108, 112, 676 N.E.2d 883 (1997). Instead, the defendant's

speedy trial time begins to run from the time that the subsequent charge was

filed (*State v. Lekan*, 2d Montgomery Dist. No. 16108, 1997 WL 351287, * 2

(June 27, 1997), citing *Baker*), or after the defendant's arrest, if the state was

unable to serve the defendant with the summons. *Delong*, 4th Dist. Ross No.

15CA3482, ¶ 11.

**{¶15}** The more specific issue of whether laboratory results regarding a

subsequent charge that show an illegal substance constitutes an "additional fact"

that triggers a new speedy trial clock is an issue that has been addressed by

several Ohio appellate districts, applying *Baker*. Of those appellate districts, a

majority, including this Court, as well as the Second, Ninth, Eleventh, and Twelfth Districts, have held that a subsequent indictment for a drug offense, which was dependent upon a lab analysis to identify the drug and was not available to the state at the time of the original indictment, is an additional fact that starts the running of a new speedy trial clock for the subsequent charge.  *See Skinner,* 4th Dist. Ross No. 06CA2931, 2007-Ohio-6320; *Lekan*; *State v. Armstrong,* 9th Dist. Medina No. 03CA0064-M, 2004-Ohio-726; *State v. Clark,* 11th Dist. Portage No. 2001-P-0031, 2004-Ohio-334; and *State v. Riley*, 12th Dist. Clermont No. CA99-09-087.  It appears that only the First and Eighth District Courts of Appeals have held otherwise.  *See Cooney*, 124 Ohio App.3d 570, 706 N.E.2d 854 (1st Dist.1997) and *Rutkowski,* 8th Dist. Cuyahoga No. 86289, 2006-Ohio-1087.

b.  The Impetus of *Skinner*

{¶16} In *Lekan*, the state, in pertinent part, charged appellant on April 28, 1995 with driving under the influence of alcohol ("DUI") in violation of R.C. 4511.19(A)(1).  *Lekan* at *1.  On July 3, 1996, after receiving lab results from appellant's urine sample that had been collected on the date of his arrest for DUI, the state charged *Lekan* with driving with a prohibited concentration of alcohol ("limits charge") in his system under former R.C. 4511.19(A)(4).  *Id.*  Both charges arose out of the same incident, the traffic stop on April 28, 1995.  *Id.*

{¶17} On July 3, 1996, appellant pleaded no contest to the both charges, but also filed a motion to dismiss the subsequently-filed limits charge alleging a violation of his right to a speedy trial.  *Id.*  The court denied his motion, found Lekan guilty, and imposed a sentence for the DUI charge, only.  *Id.*

**{¶18}** On appeal, the appellant in *Lekan*, in part argued that the trial court

erred in denying his motion to dismiss the limits charge. *Id.* The court of appeals

rejected appellant's argument reasoning:

> In this case, a charge of violating R.C. 4511.19(A)(4) was dependent upon a laboratory analysis of Lekan's urine specimen which showed a concentration "of fourteen hundredths of one gram or more by weight of alcohol per one hundred milliliters of (Lekan's) urine." See R.C. 4511.19(A)(4). This information was not available to the police on April 28, 1995 when Lekan was charged with violating R.C. 4511.19(A)(1). Accordingly, the (A)(4) charge falls within the rule announced in *Baker.*

*Id.* at *2.

The court elaborated:

> Although the State does not attempt to justify the entire period of delay between early May, 1995, when the results of the urine analysis were known to the State of Ohio, and July 3, 1996, when the per se violation pursuant to R.C. 4511.19(A)(4) was charged, this period of delay, without more, appears to be of no consequence given the facts in *Baker,* wherein the supreme court found of no consequence the fact that the State of Ohio was in possession of the information supporting the subsequent indictment by mid-September, 1993, but did not file the subsequent indictment until June 1, 1994.

*Id.*

Therefore, the court of appeals overruled appellant's assignment of error alleging

a violation of his speedy rights. *Id.*

**{¶19}** We found *Baker*, *Lekan*, and *State v. Cantrell*, 2d Clark No.

00CA95, 2001 WL 1018234 (Sept. 7, 2001) (Similar holding to *Lekan*) integral to

our analysis in *Skinner*, 4th Dist. Ross No. 06CA2931, 2007-Ohio-6320. In

*Skinner*, the state arrested appellant on January 28, 2006 for operating a vehicle

while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a)

"('hereinafter first offense')".  *Id*. at ¶ 2.  The officer took a urine sample from the

appellant after his arrest.  *Id*. at ¶ 3.

{¶20} On May 1, 2006, the state charged appellant with operating a motor

vehicle with a prohibited concentration of alcohol in his blood "(hereinafter

'second offense')" from his urine sample that was collected after his arrest for the

first offense on January 28, 2006.  *Id*.  On July 19, 2006, appellant filed a motion

to dismiss the second offense based on a speedy trial rights violation, which the

court denied.  *Id*. at ¶ 5.  Eventually, the state dismissed the first offense in

exchange for appellant pleading no contest to the second offense, and the court

found him guilty and imposed sentence.  *Id*.

{¶21} On appeal, appellant asserted that the trial court erred in denying

his motion to dismiss on a speedy trial violation for the second offense.  *Id*. at ¶

6.  He maintained that his speedy trial time should have started on January 28,

2006, the date of his arrest for the first offense.  *Id*. at ¶ 7.

{¶22} We disagreed and held that

> the charge stemming from the second offense was not subject to
> the same speedy trial time table as the charge stemming from the
> first offense. In fact, the time table for the second offense began
> to run from the date of filing and service, which took place May 1,
> 2006. The state then had 90 days from May 1, 2006, to bring the
> Appellant to trial.  Thereafter, on May 24, 2006, the Appellant
> waived his speedy trial rights to both sets of charges. Thus, as the
> Appellant waived his speedy trial rights as to the 90 day period
> contemplated by R.C. 2945.71(B)(2) and his rights have not been
> violated.

*Skinner* at ¶ 16.

Therefore, we affirmed the trial court's judgment denying appellant's motion to

dismiss the second offense.

B.  Analysis

**{¶23}** Havens acknowledges our holding in *Skinner*, but urges us to reconsider and apply *Rutkowski*, 8th Dist. Cuyahoga No. 86289, 2006-Ohio-1087. [5] Havens recounts the facts and holding in *Rutkowski* and maintains they are similar to his case herein.  And similar to the reasoning in *Rutkowski*, Havens maintains that the lab test results showing that the pills seized from him were Alprazolam, which was not received by the state until months after his initial arrest, did not provide additional facts to trigger a new speedy trial time for his possession charge.

**{¶24}** In *Rutkowski*, the appellant *admitted* during the traffic stop that she had ecstasy in her possession.  *Id.* at ¶ 26.  However, similar to the Tenth District's decision in *State v. Scott*, "[u]nlike the prosecution in *Rutkowski,* the state here had neither an admission from defendant or lab results that at the time of defendant's initial arrest confirmed he possessed [a controlled substance]." 10th Dist. Franklin No. 9AP-611, 2009-Ohio-6785, ¶ 21; *see also Lekan*, 1997 WL 351287, at * 2 (For purposes of speedy trial time, the second offense of driving with a prohibited concentration of alcohol did not arise from the same set of facts as the original charges because the second offense depended on a lab analysis that was not available to the police on the date the defendant first was charged); *Armstrong*, 9th Dist. No. 03CA0064-M, 2004-Ohio-726 (For purposes of speedy trial time, the state was not subject to the  timeframe applicable to the

original charges where the subsequent indictment depended on confirmation from a lab report that the white powder confiscated was cocaine); *Clark,* 11th Dist. No.2001-P-0031, 2004-Ohio-334 (Although the state suspected the confiscated substance was cocaine prior to its analysis, the speedy trial time did not apply from the date of the first indictment because the lab analysis results were not received until after the first indictment).  "[A]lthough the State may have had a good idea that the substance was [Alprazolam] prior to the analysis date, they did not know for sure until the substance was analyzed."  *Clark* at ¶ 73. Therefore, we find *Rutkowski* distinguishable from the instant case.

{¶25} Instead, we find our holding in *Skinner* persuasive.  While the arresting trooper testified that he believed that Havens possessed Xanax (Alprazolam) pills, he also testified "I didn't inspect it super-close, just in case it did contain something else such as fentanyl."[2]  Clearly, only a lab test could have detected if the pills were indeed Alprazolam, and/or contained other illegal substances, such as fentanyl.  In sum, similar to *Skinner*, the state did not have enough facts to charge Havens for possession of Alprazolam until the state received the lab results confirming that the substance confiscated from Havens during the traffic stop was Alprazolam.  Therefore, we decline Havens' invitation to reconsider *Skinner* and adopt the reasoning in *Rutkowski*.

---

[2] Fentanyl can be deadly in minute amounts, including by inhalation.  *See State v. Philpott*, 8th Dist. Cuyahoga Nos. 109173, 109174, and 109175, 2020-Ohio-5267, ¶ 71 ("Det. Hourihan testified that 'just one little speck of [fentanyl], if it's inhaled or even [in] contact with your skin can be fatal.'"). [brackets sic.].  Therefore, it was for the trooper's own protection to not examine the pills too closely.

**{¶26}** Applying *Skinner*, we hold that with regard to the subsequently-filed-possession charge, the lab result proving that the substance confiscated from Havens was indeed Alprazolam was not known at the time the state filed the initial OVI charge.  Therefore, the lab results provided "additional facts" that triggered a new speedy trial clock for the possession charge.

**{¶27}** However, it appears that Havens was not served with the summons for the possession charge filed on September 18, 2020, because on December 21, 2020, the trial court issued a warrant for Havens' arrest.  Havens was not arrested for possession until January 4, 2021.  Accordingly, his speedy trial time did not start to run until January 5, 2021.  *See State v. Szorady,* 9th Dist. No. 02CA008159, 2003-Ohio-2716*,* at ¶ 12.  (The time for speedy trial begins to run a day after a defendant is arrested).  From January 5, 2021 (the date of after Havens arrest) up to, and including March 25, 2021 (the date Havens pleaded guilty to the possession) was 80 days.  Therefore, the state did not violate Havens speedy trial rights under R.C. 2945.71(B)(2) (First degree misdemeanor must be brought to trial within 90 days).

## CONCLUSION

**{¶28}** The trial court did not err in denying Havens' motion to dismiss the possession charge on speedy trial grounds.  Accordingly, we affirm the trial court's judgment entry denying Havens' motion to dismiss.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**